1  BURSOR & FISHER, P.A.
   L. Timothy Fisher (State Bar No. 191626)
2  2121 North California Blvd., Suite 1010
   Walnut Creek, CA 94596
3  Telephone: (925) 482-1515
   Facsimile: (925) 407-2700
4  E-Mail: ltfisher@bursor.com

5  BURSOR & FISHER, P.A.
   Joseph I. Marchese
6  369 Lexington Avenue, 10th Floor
   New York, NY 10017
7  Telephone: (212) 989-9113
   Facsimile: (212) 989-9163
8  E-Mail: jmarchese@bursor.com

9  Attorneys for Plaintiff

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12

13  KRISTY GAMAYO, individually and on behalf        Case No. C11-00762 SBA
    of all others similarly situated,
14
                        Plaintiff,
15
            v.                                       CLASS ACTION COMPLAINT
16
    MATCH.COM, L.L.C.,
17                                                   JURY TRIAL DEMANDED
                        Defendant.
18

19

20

21

22

23

24

25

26                                                              ORIGINAL
27

28
    CLASS ACTION COMPLAINT

Plaintiff Kristy Gamayo ("Plaintiff") by her undersigned attorneys, brings this class action complaint against Match.com, L.L.C. ("Match" or the "Company"). Plaintiff's allegations are based upon personal knowledge as to her own acts and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.     This is a class action against Match for violation of California's Consumers Legal Remedies Act, violation of California's Unfair Competition Law's unlawful, unfair and fraudulent and deceptive prongs, violation of California's False Advertising Law, money had and received, breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation and unjust enrichment. Plaintiff and members of the class (the "Class") and are all current or past paying members or subscribers to Match's online dating service.

2.     Match represents itself as "the service for single adults to meet each other online" when in fact Match's service is little more than a scheme to induce members of the public to join and pay for Match's website based on false pretenses.

3.     Upwards of sixty percent (60%) of the profiles on Match are either inactive former users or fake or fraudulently posted by scammers and others. In numerous instances the profile photos attached to these fake and fraudulent profiles are of pornographic actresses and models, seemingly stolen from independent websites. To the extent that Match's online profiles do not belong to the scammers that infest the site, the rest are unreachable by legitimate users attempting to avail themselves of the services offered by Match and paid for via subscription fees. Match, however, benefits from and relies on the artificially inflated number of profiles to induce prospective members to pay for and join the site, and to deceive its current members into remaining as paying subscribers.

4.      With regard to inactive members (*i.e.*, members who have cancelled their Match subscriptions and/or allowed their subscriptions to lapse), Match takes virtually no action to remove their profiles from its website, which therefore remain searchable by members, appear as, and are in fact counted among Match's "active" members for months and sometimes years after the individuals have become inactive. And, Match will only remove profiles after a former subscriber calls to complain and specifically requests its removal.

5.      With regard to the thousands of fake and fraudulent profiles on its website (*i.e.*, profiles likely placed by third-parties for illegitimate and unlawful purposes), Match likewise makes little to no effort to vet, police or remove these profiles and thereby permits, condones and acquiesces in their posting. The effect of these deceptive practices was to mislead Plaintiff and other members of the Class into believing that millions of individuals were active members and further expose Plaintiff and members of the Class to various frauds and other schemes. Plaintiff and other Match subscribers also were misled into joining Match and/or were misled into renewing their memberships based on communications from Match that active members were trying to contact them when such representations were false.

6.      Worse yet, Match overbills and makes unauthorized charges to the debit and credit cards of members and former members alike.

## JURISDICTION AND VENUE

7.      This Court has diversity subject-matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. §1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the proposed Class; (b) at least some members of the proposed Class have a different citizenship from Match; and (c) the claims of the

proposed Class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. *See* 28 U.S.C. §1332(d)(2) and (6).

8.     This Court has personal jurisdiction over Match because Match is registered with the California Secretary of State to conduct business within California and conducts substantial business within California, such that Match has significant, continuous and pervasive contacts with the State of California.

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Match transacts significant business within this District. Venue is also proper under 28 U.S.C. § 1391(c) because Match is subject to personal jurisdiction in this District.

10.     Match's Terms of Use Agreement, which is located on its website, includes a choice of law provision, stating that Texas law shall govern disputes involving Match, and a forum selection clause, providing that the state and federal courts of the State of Texas, in Dallas County, shall be the venue and jurisdiction for the resolution of any such dispute. However, enforcement of Match's choice of law and forum selection clauses is unreasonable under the circumstances of this case.

11.     First, Match's choice of law and forum selection clauses are invalid since they were incorporated into Match's Terms of Use Agreement as a result of and in connection with Match's false and misleading business practices described herein.

12.     Second, enforcement of the forum selection clause would effectively deprive Plaintiff and the proposed Class of their day in court where, as here, Plaintiff, who resides in San Francisco, California, would have to incur too much travel and expense to litigate in Texas to recover her relatively small monetary claims. The distance between San Francisco, California and Dallas, Texas is over 1,700 hundred miles each way, and a direct round-trip flight lasts 7 hours in the air, excluding time spent preparing for the trip, travelling to and from the airports and waiting

---

CLASS ACTION COMPLAINT                                                                                     3

for flights.  According to American Airlines' website one direct round-trip economy class ticket from San Francisco to Dallas costs $592.00 plus tax.  Also, based on telephone inquiries to the Dallas Courtyard and Marriott hotels, the nightly weeknight rate for an average room costs $175.00 plus tax.  In comparison, Match's monthly membership fee approximates $39.99.  Thus, Match's forum selection clause, which would require Plaintiff to travel 3,400 miles and spend multiples of her small monetary claims just to make her case, is not reasonable.  Adding to the unreasonableness is the extra time and money that Plaintiff would have to devote to the litigation, including but not limited to additional time off from work and any resulting lost wages.  Thus, trial of this matter in Texas would be so gravely difficult and inconvenient that it would effectively deprive Plaintiff of her day in court, thereby making enforcement of Match's forum selection clause unfair, unjust and unreasonable.

13.    Third, enforcement of Match's forum selection clause would be fundamentally unfair since Texas is not a suitable alternative forum to California in this case.  Enforcement of Match's forum selection clause, which is accompanied by a choice of law provision favoring Texas, would unreasonably, unfairly and unjustly deprive Plaintiff and the Class members of material rights and remedies under California laws that protect them, including California's Consumers Legal Remedies Act, False Advertising Law and Unfair Competition Law.

14.    Finally, enforcement of Match's choice of law and forum selection clauses would substantially diminish the legal rights of Plaintiff and other Class members in violation of California's strong public policy with regard to consumer protections.  Therefore, this Court remains the proper venue for this case, and the Court may apply the substantive law of California, where Plaintiff resides and was victimized by Match's unlawful conduct described herein.

**PARTIES**

15.    Plaintiff Kristy Gamayo is a resident of San Francisco, California, and at times relevant hereto, a paid subscriber to Match's online dating service.

16.    Match is a Delaware limited liability corporation that maintains its headquarters and principal place of business in Dallas, Texas.    Match is a wholly owned subsidiary of IAC/InteractiveCorp and operates a website for single adults to meet each other online.  Members pay a monthly fee to access all features of the website.  The website is interactive and members use its services to contact each other online.

**CLASS ACTION ALLEGATIONS**

17.    Plaintiff brings this class action on her own behalf and on behalf of all similarly situated individuals who are current or former members of the Match service and suffered damages as a result of subscription fees paid to Match for the use of its website.

18.    Plaintiff also seeks to represent a subclass defined as all Class members who resided in California while they subscribed to Match's service (the "California Subclass").

19.    This action is properly maintainable as a class action.

20.    The Class and California Subclass are so numerous that joinder of all members is impracticable.

21.    The number and identities of Class and California Subclass members can easily be determined from the records maintained by Match and/or its agents.  The disposition of their claims in a class action will be of benefit to the parties and to the Court.

22.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this action as a class action.    The likelihood of individual Class members prosecuting separate claims is remote.

1

2

3

4

5

6

23.     There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class and California Subclass.  Among the questions of law and fact which are common to the Class and California Subclass, and which predominate over questions affecting any individual Class or California Subclass member are, *inter alia*, the following:

7

8

9

10

11

12

13

14

15

(a)     Whether Match negligently or fraudulently misrepresented to Class members its universe of active subscribers when, in fact, more than sixty percent (60%) of the profiles of alleged subscribers are inactive, fake or fraudulent members who could not be reached via the site because their subscriptions have expired and/or are illegitimate.

(b)     Whether Match permitted, condoned or acquiesced in posting fake or fraudulent profiles by international Internet scammers or others, thereby misleading Plaintiff and other members of the Class into believing that millions of persons were active members or worse, exposing Plaintiff and members of the Class to various frauds and other schemes.

16

17

18

(c)     Whether Match sent false solicitations informing potential, current or former members that a potential match is trying to contact them to induce them to subscribe, maintain or renew their subscriptions only to find out that the supposed seeker does not exist.

19

20

21

(d)     Whether Match engages in overbilling and making unauthorized charges to the debit and credit cards of members and former members alike.

22

23

(e)     Whether Match's conduct violated California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*

24

25

26

27

(f)     Whether Match's practices described herein are unlawful, unfair or fraudulent business practices under California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq.*

28

(g)     Whether Match's conduct violated California's False Advertising Law ("FAL"), Business & Professions Code §§ 17500 *et seq.*

(h)     Whether Match's conduct constituted a breach of contract and common law covenants with Plaintiff and others similarly situated.

(i)     Whether Match was unjustly enriched by such conduct.

24.     Plaintiff is a member of the Class and California Subclass and is committed to prosecuting this action. Plaintiff has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and California Subclass in that each Class and California Subclass member was subjected to the same illegal conduct, was harmed in the same way and has claims for relief under the same legal theories. Plaintiff does not have interests antagonistic to or in conflict with those they seek to represent. Plaintiff is, therefore, an adequate representative of the Class and the California Subclass.

25.     The likelihood of individual Class members prosecuting separate individual actions is remote due to the relatively small loss suffered by each Class member as compared to the burden and expense of prosecuting litigation of this nature and magnitude. Absent a class action, Match is likely to avoid liability for its wrongdoing, and the Class members are unlikely to obtain redress for the wrongs alleged herein. Also, unless a classwide injunction is issued, Match will continue to commit the violations of law alleged herein, and the members of the Class and the general public will continue to be misled.

26.     Adjudication of this case on a class-wide basis is manageable by this Court and far more fair and efficient than individualized litigation. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action mechanism presents the

1  benefits of single adjudication, economy of scale and comprehensive supervision by a single court

2  on the issue of Match's liability. Class treatment of the liability issues will ensure that all claims

3  and claimants are before this Court for consistent adjudication of the liability issues.

### FACTUAL ALLEGATIONS

27.     As alleged herein, Match breached its contract and common law covenants with Plaintiff and other members of the Class by representing itself in its Terms of Use Agreement (the "Agreement") as "the service for single adults to meet each other online" when in fact Match's service is little more than a scheme to induce members of the public to join and pay for Match's website based on false pretenses. A copy of the Agreement is annexed hereto as Exhibit A.[1]

28.     Match represents in its Agreement that it is "the service for single adults to meet each other online." Agreement ¶ *Intro*.

29.     Plaintiff and members of the Class entered into the Agreement by subscribing to Match's Internet website, where the Agreement was posted.

30.     By entering into the Agreement, Plaintiff and members of the Class became active members of Match's service and paid monthly subscription fees.

31.     Under the terms of the Agreement, a person can become a member at no cost with access to limited services. To access additional features and services, including, but not limited to, the ability to communicate with other members, an individual must become a paying subscriber to the service. Agreement ¶3

32.     Under the terms of the Agreement, members agree not to post or transmit to other members or to Match any inaccurate material, misleading or false information. Agreement ¶9(a). Match further represents in the Agreement that Match may review and delete any content, photos

---

[1] Further references to specific provisions of the Agreement will be cited as "Agreement ¶__."

or profiles that in the sole judgment of Match violate the provision of the Agreement. Agreement ¶9(b).

33.     Match reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates the provisions of the Agreement, including, but not limited to, removing the offending communication from the service and terminating the membership of violators who post or provide information that is false or misleading. Agreement ¶9(d).

34.     The Agreement also provides that information posted in the profiles of members must be accurate, current and complete. Agreement ¶9(h).

35.     The Agreement also provides that Match will not allow its subscribers to: (a) "impersonate any person or entity," (b) "'stalk' or otherwise harass any person," and (c) "forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service." Agreement ¶10.

36.     Match also represents that to protect the integrity of the service, Match reserves the right at any time in its sole discretion to block members from certain IP addresses from accessing the website. Agreement ¶14.

37.     The foregoing provisions of the Agreement induced or were intended to induce Plaintiff and Class members into the false belief that the information posted on Match's service was accurate and legitimate, that Match would not tolerate and would actively police and remove any false or misleading information, and that violators of these policies would be removed by Match and have their membership rights terminated.

38.     Match breaches the terms of the Agreement by, *inter alia*:

    (a)     failing to vet new profiles;

    (b)     failing to remove inactive profiles in a timely fashion;

    (c)     failing to accurately disclose its active and reachable membership base;

(d)    falsely labeling inactive profiles as "active";

(e)    failing to police its site from the proliferation of false and fraudulent profiles;

(f)    failing to take reasonable steps to remove and block scammers, even after certain profiles have been reported;

(g)    failing to properly warn subscribers of the proliferation of scammers on the site and failing to provide information on how to recognize and report scamming activity;

(h)    failing to monitor and block IP addresses from certain countries from where scamming activity flourishes (*i.e.*, Nigeria, Ghana, Russia, Eastern Europe, Malaysia and others); and

(i)    representing itself as a legitimate service for single adults and accepting subscription fees from members and then failing to provide the service offered.

39.    Match does not only fail to remove the profiles of cancelled subscribers and those whose paid subscription has expired but, in fact, intentionally avoids doing so unless and until such persons expressly request that their profiles be removed from the site.

40.    Match fails to remove the profiles of these inactive and former subscribers to represent to the public that Match has millions more active members. By artificially inflating its active membership numbers, Match induced Plaintiff and members of the Class to either become or remain paying members to be able to communicate with other members, the overwhelming majority of which are in fact nonexistent and cannot be reached.

41.    Upon information and belief, *as many as 60%* (and by some accounts *more*) of the profiles on the Match website belong to inactive and/or fake or fraudulent users whose profiles could be viewed by paying members and appear as "active," but who could not be contacted.

42.     Match routinely and intentionally represents that there are significantly more active members on its website than there actually are..

43.     Some of the tactics Match uses to falsely represent its site include, *inter alia*:

(a)     intentionally leaving profiles of inactive members viewable and searchable on its websites far beyond their date of inactivity or cancellation;

(b)     taking virtually no steps to remove inactive users from view until a complaint is received by the former user of that account;

(c)     falsely labeling profiles as "active within [#] days" when the accounts belong to cancelled and/or inactive accounts that could not be contacted;

(d)     improperly sending emails of suggested "matches" to its members and inactive members, even though these "matches" belong to inactive accounts who cannot be contacted;

(e)     sending former and inactive members "winks" informing them that a potential match is trying to contact them to get them to renew their subscriptions (only to find out after they do so that the supposed seeker does not exist);

(f)     failing to effectively vet new profiles to determine whether they are fake or fraudulent despite easily discernable "red flags" (including repeated use of imagery and language, and use of notorious IP address origins);

(g)     failing to effectively police its site to monitor and remove fake and fraudulent member profiles that remain viewable by unwitting members; and

(h)     failing to warn and protect its members from the pervasive scammers that populate its site.

44.     Plaintiff is informed and believes that in 2006-07, members were able to hide their profiles by setting their accounts manually to "inactive" or "hidden."  However, in 2008, that

policy was changed so that only Match corporate employees could block a member's profile from view.

45.     The Match database is littered with names and faces of numerous individuals who are unreachable and a huge percentage of the profiles were not real members but "filler profiles."

46.     Match does not have adequate safeguards to protect its subscribers from scammers who regularly access the site and post false profiles to mislead and commit frauds and other crimes against subscribers.   Further, Match does not adequately police its website to ensure that subscribers are in fact legitimate members who are "interested in meeting each other" as the Agreement provides.

47.     When new members submit a profile, they are instructed, "We have your profile and it's now being read, like all submissions, by our Customer Care team. Once it's approved – usually within 24 hours – we'll send you an email to let you know it's live on the site."

48.     Match's representation that it engages in an eyes-on approval process is false. Indeed, new profiles are "approved" and posted almost instantaneously, illustrating that the approval process is mere window dressing to further deceive users into a sense of security.

49.     Plaintiff is informed and believes that upwards of 60% of the profiles (and by some reports more) were either inactive former users or fake or fraudulently posted by international internet scammers seeking to engage in identity theft or lure members in fraudulent schemes.

50.     Few, if any, proactive steps are taken by Match to ensure that profiles posted by scammers are policed and removed.  In fact, only when a subscriber complains about a certain profile is any investigation undertaken to determine if the profile is fraudulent.

51.     Despite Match's representation that it may review and delete any content, photos or profiles that violate its terms (Agreement ¶9(b)), thousands of profiles remain on Match that are fake or fraudulent.  In numerous instances, the same photograph or groups of photographs and the

same text and descriptions are used for hundreds of different profiles with the profiles indicating that the same person (albeit different user names) resides in different parts of the United States.

52.    In numerous instances the profile photos attached to these fake and fraudulent profiles are of pornographic actresses and models, seemingly stolen from independent websites.

53.    In addition, profiles are listed as belonging to members in the United States when they are in fact posted using IP addresses originating in Nigeria, Russia, Eastern Europe, Malaysia, Ghana and other regions notorious for being hotbeds of Internet scamming activity.

54.    Numerous computer technologies exist that would allow Match to effectively and efficiently police its website for the benefit and safety of its customers, including, but not limited to, photograph and key word recognition software (to identify use of the same photographs and/or same text in multiple profiles) and IP address and email recognition software (to identify users abroad from certain geographic regions who fraudulently post profiles domestically for illegal purposes). However, despite its existence and availability, Match fails to utilize such technology or take any reasonable steps to ensure the integrity of its site.

55.    The reason Match does not take any serious measures to rid its site of inactive, fake or fraudulent profiles, and in fact takes steps to ensure such profiles remain on the site, is because Match expressly and publicly relies on the artificially inflated number of profiles to demonstrate that it is a growth company, to induce prospective members to pay for and join the site, and to deceive its current members to maintain them as paying subscribers.

56.    Match also relies on the fact that the appearance of gender parity is achieved, albeit artificially, by virtue of the fact that most fake and fraudulent profiles are females since the majority of actual active users are single males.

57.    Match also engages in fraudulent or misleading business practices to induce members of the Class to renew their subscriptions. At or about the time that a paid member's

subscription is about to expire, Match and/or its agents sends to such members an electronic communication, or "wink," that advises the member that persons who are active Match members are trying to contact them. To respond to the purported request, the member must renew his or her membership. Once such membership is renewed, either the profile of the purportedly interested person disappears or is inactive. Thus, Match fraudulently induces paid subscriptions by posting false or misleading information that is prohibited by the Agreement.

58.     Match also continues to send email notifications to former members alerting them of potential "matches," in some cases more than a year after the person has deactivated their account, that similarly evaporate once the individual reactivates their account.

59.     In addition, Match overbills and makes unauthorized charges to the debit and credit cards of members and former members alike.

60.     As a result of the foregoing actions and omissions of Match, Plaintiff and other members of the Class were misled into joining Match as paying subscribers and/or misled into renewing their membership based on communications from Match that active members were trying to contact them when such representations were false.

61.     As a result of the representations in the Agreement, Plaintiff and members of the Class joined Match reasonably believing that Match would take steps to insure the integrity and legitimacy of its site, including policing and removing information that was false or misleading, and blocking members who engaged in illegitimate and illegal activity when the same was discovered.

62.     On the basis of Match's advertisements and website statements as to the vast number of active members, which representations were false and known to be such by Match, Plaintiff and others similarly situated acted in reliance on such representations and joined Match's online dating service as paying subscribers.

63.     In addition, Plaintiff and other members of the Class lost money or property as a result of overbilling or unauthorized charges to their credit cards imposed by Match, which Match refused to refund despite being asked to do so after the improper charges were contested.

64.     As a result of the foregoing, Plaintiff and others similarly situated suffered damages, including, but not limited, to the cost of their subscriptions and/or renewal of same.

## COUNT I
### (Common Count For Money Had And Received)

65.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

66.     Plaintiff brings this COUNT I individually and on behalf of the members of the proposed Class against defendant Match.

67.     Match has improperly billed Plaintiff and Class members for services that it promised but did not provide.

68.     As a proximate result of Match's improper billings, Match has received monies from Plaintiff and Class members, and defendant has no right thereto.

69.     The monies received by Match for these charges belong to Plaintiff and Class members and must be returned to them.

70.     WHEREFORE, Plaintiff seeks an order requiring Match to:

(a)     Pay damages according to proof;

(b)     Immediately cease the improper billing for services that it promised but did not provide;

(c)     Make full restitution of all monies wrongfully obtained; and

(d)     Disgorge all ill-gotten revenues and/or profits.

## COUNT II
### Violation of California's Consumers Legal Remedies Act,
### California Civil Code § 1750, *et seq.*
### (Injunctive Relief Only)

71.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

72.    Plaintiff brings this COUNT II individually and on behalf of the members of the proposed California Subclass against defendant Match.

73.    Match violated Civil Code § 1770(a)(2), (3), (5), (9), (14) and (16) by disseminating false solicitations informing potential, current or former members that a potential match is trying to contact them through the Match.com website when that is not the case.

74.    Match violated Civil Code § 1770(a)(5), (9), (14) and (16) by misrepresenting the prices and charges for its services and imposing unauthorized charges on California Subclass members' accounts.

75.    Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for Match's purported services they otherwise would not have incurred or paid.

76.    On February 17, 2011, prior to the filing of this Complaint, a CLRA notice letter was served on defendant which complies in all respects with California Civil Code §1782(a). Plaintiff sent defendant a letter via certified mail, return receipt requested, advising defendant that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.    Defendant was further advised that in the event that the relief requested has not been provided within (30) days, Plaintiff will amend this Complaint to include a request for monetary damages pursuant to the CLRA.    A true and correct copy of Plaintiff's CLRA letter is attached hereto as Exhibit B.

77.     WHEREFORE, Plaintiff presently seeks only injunctive relief for these violations of the CLRA.

## COUNT III
### Violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq*.

78.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

79.     Plaintiff brings this COUNT III individually and on behalf of the members of the proposed California Subclass against defendant Match.

80.     Match violated Business & Professions Code § 17500 by publicly disseminating misleading and false advertisements informing potential, current or former members that a potential match is trying to contact them through the Match.com website when that is not the case.

81.     Match also violated Business & Professions Code § 17500 by publicly disseminating misleading and false advertisements representing to current members that there are significantly more active members on the website than there actually are, and by intentionally leaving profiles of inactive members viewable and searchable on its website far beyond their date of inactivity or cancellation, and by falsely labeling profiles as "active within [#] days" when the accounts had been inactive for far longer than represented and/or belonged to cancelled and/or inactive accounts that could not be contacted.

82.     Match's misleading and false advertisements were disseminated to increase and maintain the number of subscribers for the purported services provided on the Match.com website.

83.     Match knew or should have known that its false advertisements were untrue or misleading.

84.     Furthermore, Match publicly disseminated the false advertisements as part of a plan or scheme and with the intent not to sell its services as advertised.

85.     Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the FAL because they have incurred charges and/or paid monies for Match's purported services they otherwise would not have incurred or paid.

86.     Pursuant to Bus. & Prof. Code § 17500, Plaintiff seeks an order of this Court permanently enjoining Match from continuing to publicly disseminate misleading and false advertisements as alleged herein.  Plaintiff also seeks an order requiring Match to:

        (a)     make full restitution for all monies wrongfully obtained; and

        (b)     disgorge all ill-gotten revenues and/or profits.

**COUNT IV**
**Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"),**
**Business & Professions Code §§ 17200 _et seq._**
**(Unlawful Practices)**

87.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

88.     Plaintiff brings this COUNT IV individually and on behalf of the members of the proposed California Subclass against defendant Match.

89.     Match violated the unlawful prong of the UCL by violating Civil Code § 1770(a)(2), (3), (5), (9), (14) and (16) and Business & Professions Code § 17500 as described above.

90.     Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the unlawful prong of the UCL because they have incurred charges and/or paid monies for Match's purported services they otherwise would not have incurred or paid.

91.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Match from continuing to engage in their unlawful conduct as alleged herein.  Plaintiff also seeks an order requiring Match to:

        (a)     immediately cease the conduct described herein;

1      (b)    make full restitution of all monies wrongfully obtained; and

2      (c)    disgorge all ill-gotten revenues and/or profits.

3

4                                    **COUNT V**
       **Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"),**
5              **Business & Professions Code §§ 17200 *et seq.***
                          **(Unfair Practices)**

6          92.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth

7   above as though fully set forth herein.

8
           93.    Plaintiff brings this COUNT V individually and on behalf of the members of the
9
10  proposed California Subclass against defendant Match.

11         94.    Match's conduct, described herein, violated the unfair prong of the UCL because

12  such conduct violated various laws and policies recognized by the California Legislature and the

13  California courts, including without limitation, the CLRA and FAL, because the utility of Match's

14  conduct is significantly outweighed by the gravity of the harms it imposed on consumers, and
15
16  because Match's business practices described herein are oppressive, unscrupulous or substantially

17  injurious to consumers.

18         95.    Plaintiff and the members of the California Subclass have suffered harm as a result

19  of these violations of the unfair prong of the UCL because they have incurred charges and/or paid

20  monies for Match's purported services they otherwise would not have incurred or paid.

21
           96.    Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court
22
23  permanently enjoining Match from continuing to engage in their unfair and unlawful conduct as

24  alleged herein.  Plaintiff also seeks an order requiring Match to:

25         (a)    immediately cease its unfair and unlawful acts and practices;

26         (b)    make full restitution of all monies wrongfully obtained; and

27         (c)    disgorge all ill-gotten revenues and/or profits.

28

**COUNT VI**
**Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"),**
**Business & Professions Code §§ 17200 *et seq.***
**(Fraudulent and Deceptive Practices)**

97.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

98.     Plaintiff brings this COUNT VI individually and on behalf of the members of the proposed California Subclass against defendant Match.

99.     Match violated the fraudulent and deceptive prong of the UCL by disseminating false solicitations informing potential, current or former members that a potential match is trying to contact them through the Match.com website when that is not the case.

100.    Match also violated the fraudulent and deceptive prong of the UCL by misrepresenting the prices and charges for its services and imposing unauthorized charges on California Subclass members' accounts.

101.    Furthermore, Match violated the fraudulent and deceptive prong of the UCL by publicly disseminating misleading and false advertisements representing to current members that there are significantly more active members on the website than there actually are, and by intentionally leaving profiles of inactive members viewable and searchable on its website far beyond their date of inactivity or cancellation, and by falsely labeling profiles as "active within [#] days" when the accounts had been inactive for far longer than represented and/or belonged to cancelled and/or inactive accounts that could not be contacted.

102.    Plaintiff and the members of the California Subclass have suffered harm as a result of these violations of the fraudulent and deceptive prong of the UCL because they have incurred charges and/or paid monies for Match's purported services they otherwise would not have incurred or paid.

103. Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an order permanently enjoining defendants from continuing to engage in their fraudulent and deceptive conduct alleged herein. Plaintiff also seeks an order requiring Match to:

> (a) immediately cease its fraudulent and deceptive acts and practices;
>
> (b) make full restitution of all monies wrongfully obtained; and
>
> (c) disgorge all ill-gotten revenues and/or profits.

## COUNT VII
### (Breach Of Contract)

104. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

105. Plaintiff brings this COUNT VII individually and on behalf of the members of the proposed Class against defendant Match.

106. Match posts on its website the Agreement to provide services to prospective subscribers. On its website and in the Agreement, Match falsely represents that it is a "service for single adults to meet each other online" when, in fact, the service is little more than a scheme to defraud Plaintiff and others members of the Class out of the subscription fees it collects. Agreement ¶ *Intro*.

107. The scheme is effectuated by Match falsely advertising that "millions" of individuals are members of the service, when, in fact, less than forty percent (40%) of the profiles on the site belong to active users who can be reached via the site. The rest belong to inactive users, or are fake or fraudulently placed for illegitimate purposes.

108. While Match represents in the Agreement that it will preserve the integrity of the site, Match, in effect, aids and abets the Internet scammers by failing to take proactive steps to

1  police its site, adequately warn its members of fraudulent activity, or remove or block such

2  profiles.

3      109. Plaintiff and others members of the Class entered into contracts for the service

4  Match advertises (*i.e.*, a legitimate resource for single adults) without knowledge or information

5
6  regarding the actual state of operation of Match's site.

7      110. Plaintiff and the members of the Class, as parties to the contract, understood that the

8  contract was intended to provide each paying subscriber with access to a legitimate and genuine

9  online dating service in exchange for the payment of monthly subscription fees.

10      111. Plaintiff and Class members have performed all of their duties and obligations under

11  such contracts, except those excused by Match's nonperformance.

12
13      112. Match breached the aforementioned contract by depriving Plaintiff and members of

14  the Class of the benefit of their bargain by intentionally, purposefully and/or negligently providing

15  and presenting, through its website, an artificially inflated membership base comprised of inactive

16  profiles designated as active, and false and/or fraudulent profiles placed by Internet scammers and

17  others. Match further breached its Agreement by failing to take any reasonable steps to remove

18  such profiles, by failing to properly take steps to police its site and otherwise by failing to ensure

19  the integrity and legitimacy of its services. Additionally, Match breached its Agreement by

20  imposing unauthorized charges on Class members' accounts.

21
22      113. As a direct and proximate result of Match's breach of contract, Plaintiff and others

23  similarly situated have and will continue to suffer damages in terms of subscription fees paid.

24
                         **COUNT VIII**
25               **(Breach Of Implied Covenant Of Good Faith And Fair Dealing)**

26      114. Plaintiff incorporates by reference and re-alleges each and every allegation set forth

27  above as though fully set forth herein.

28

115. Plaintiff brings this COUNT VIII individually and on behalf of the members of the proposed Class against defendant Match.

116. The contract between Match, Plaintiff and other members of the Class imposed on each party a duty of good faith and fair dealing in the performance of the contract.

117. Match breached its duty of good faith and fair dealing by intentionally, purposefully and/or negligently providing and presenting, through its website, an artificially inflated membership base comprised of inactive profiles designated as active, and false and/or fraudulent profiles placed by Internet scammers and others. Match further breached its duty of good faith and fair dealing by failing to take any reasonable steps to remove such profiles, by failing to properly take steps to police its site, and otherwise by failing to ensure the integrity and legitimacy of its services. Additionally, Match breached its duty of good faith and fair dealing by misrepresenting the prices and charges for its services and by overbilling and/or imposing unauthorized charges on Plaintiff's and other Class members' accounts.

118. The conduct of Match was conscious, deliberate and unfairly frustrated the agreed upon purpose of the parties in carrying out the Agreement.

119. The conduct of Match disappointed the reasonable expectations of Plaintiff and other members of the Class, thereby depriving them of the benefits of the Agreement.

120. As a direct and proximate result of Match's breach of good faith and fair dealing, Plaintiff and others similarly situated have and will continue to suffer damages in terms of subscription fees paid and all overbilling and unauthorized charges that were incurred.

## COUNT IX
### (Negligent Misrepresentation)

121. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

---

CLASS ACTION COMPLAINT                                                                    23

122. Plaintiff brings this COUNT IX individually and on behalf of the members of the proposed Class against defendant Match.

123. Match represented via the Internet and elsewhere that it offered a legitimate and genuine online dating service in exchange for the payment of a monthly subscription fee.

124. Match represented in the Agreement that it provided a "service for single adults to meet each other online." Agreement ¶ *Intro*.

125. These representations were material facts that were both essential to and formed the essence of the Agreement.

126. Match made these representations with the intent to induce Plaintiff and Class members to act upon them by joining and paying for its purported services.

127. At the time Match made these representations, Match knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

128. Plaintiff and Class members justifiably and detrimentally relied on these representations and, as a proximate result thereof, have and will continue to suffer damages in terms of subscription fees paid.

## COUNT X
### (Unjust Enrichment/Common Law Restitution)

129. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

130. Plaintiff brings this COUNT X individually and on behalf of the members of the proposed Class against defendant Match.

131. Match received benefits from, and at the expense of Plaintiff and members of the Class, who were improperly billed for services that Match promised but did not provide.

132.    It would be unjust for Match to retain those benefits as the expense of Plaintiff and other Class members.

133.    WHEREFORE, Plaintiff seeks an order requiring Match to:

   (a)    pay damages according to proof;

   (b)    immediately cease all improper and unauthorized billing;

   (c)    make full restitution of all monies wrongfully obtained; and

   (d)    disgorge all ill-gotten revenues and/or profits.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the proposed Class and California Subclass, prays for judgment and relief as follows:

A.    Declaring that this lawsuit is properly maintainable as a class action and certifying Plaintiff as a representative of the Class and California Subclass;

B.    For all forms of relief set forth above;

C.    For an order certifying the proposed Class and California Subclass and appointing Plaintiff and her undersigned counsel or record to represent the proposed Class and California Subclass;

D.    Awarding damages against Match in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

E.    Awarding punitive damages;

F.    Awarding Plaintiff and the Class their attorneys' fees, costs and disbursements and reasonable allowances for Plaintiff's counsel and experts' fees and expenses; and

G.    Granting such other and further relief as may be just and proper.

1

## **DEMAND FOR TRIAL BY JURY**

2

Plaintiff and members of the Class and California Subclass demand a trial by jury of all

3

issues so triable.

4

Dated: February 18, 2011

5

Respectfully submitted,

6

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)

7

2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596

8

Telephone: (925) 482-1515
Facsimile: (925) 407-2700

9

E-Mail: ltfisher@bursor.com

10

By: L. Timothy Fisher

11

L. Timothy Fisher

12

13

BURSOR & FISHER, P.A.
Joseph I. Marchese

14

369 Lexington Avenue, 10th Floor
New York, NY 10017

15

Telephone: (212) 989-9113
Facsimile: (212) 989-9163

16

E-Mail: jmarchese@bursor.com

17

Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

26

# EXHIBIT A



account  mobile  help  sign in

Home  Search  Matches  Daily 5  Messages  Profile

Rev Up Your Love Life With These Tips! GO »

The Beginning. Start yours »

## Match.com Terms of Use Agreement

Welcome to Match.com, the service for single adults to meet each other online, operated by Match.com, L.L.C. ("Match.com"). By using the Match.com Website, (the "Website") you agree to be bound by these Terms of Use (this "Agreement"), whether or not you register as a member of Match.com ("Member"). If you wish to become a Member and make use of the Match.com service (the "Service"), please read these Terms of Use. **If you object to anything in this Agreement or the Match.com Privacy Policy, do not use the Website or the Service.** The Terms of Use are subject to change by Match.com at any time, effective upon posting on the Match.com website, and your use of the Service after such posting will constitute acceptance by you of such changes.

1. **Acceptance of Terms of Use Agreement.**

   a. **Electronic Agreement.** This Agreement is an electronic contract that sets out the legally binding terms of your use of the Website and your membership in the Service. This Agreement may be modified by Match.com from time to time, such modifications to be effective upon posting by Match.com on the Website. This Agreement includes Match.com's Acceptable Use Policy for Content Posted on the Website, Match.com's Privacy Policy, Match.com's subscription policies and any notices regarding the Website. By accessing the Website or becoming a Member, you accept this Agreement and agree to the terms, conditions and notices contained or referenced herein.

   b. **Electronic Form.** By accessing the Website or becoming a Member, you consent to have this Agreement provided to you in electronic form.

   c. **Non-electronic Copy.** You have the right to receive this Agreement in non-electronic form. You may request a non-electronic copy of this Agreement either before or after you electronically sign the Agreement. To receive a non-electronic copy of this Agreement, please Contact Us online or send a letter and self-addressed stamped envelope to: Match.com, P.O. Box 12305, Dallas, TX 75225.

   d. **Withdrawing Your Consent.** You have the right at any time to withdraw your consent to have this Agreement provided to you in electronic form.

      **(i) Effect.** Should you choose to withdraw your consent to have this Agreement provided to you in electronic form, we will discontinue your then-current username and password. This means that you will not have the right to use the Service unless, and until, we issue you a new username and password. We only will issue you a new username and password after we receive a signed copy of a non-electronic version of this Agreement, which we will send to you upon request.

      **(ii) Notice.** To withdraw your consent and/or request a non-electronic copy of this Agreement, please Contact Us online or send a letter and self-addressed stamped envelope to: Match.com, P.O. Box 12305, Dallas, TX 75225.

      **(iii) Prospective Nature.** Your withdrawal of consent shall be effective within a reasonable time after we receive your

2/18/2011

withdrawal notice described above. Your withdrawal of consent
will not affect the legal validity or enforceability of the
Agreement provided to, and electronically signed by, you prior
to the effective date of your withdrawal.

e. **Access and Retention.** In order to access and retain this
electronic Agreement, you must have access to the World Wide
Web, either directly or through devices that access web-based
content, and pay any service fees associated with such access. In
addition, you must use all equipment necessary to make such
connection to the World Wide Web, including a computer and
modem or other access device. Please print a copy of this
document for your records. To retain an electronic copy of this
Agreement, you may save it into any word processing program.
Via, the Website, we will notify you of any changes in the
hardware or software requirements needed to access and/or
retain this Agreement that create a material risk that you will not
be able to continue to access and/or retain this electronic
Agreement.

2. **Eligibility.** You must be at least eighteen (18) years of age and single or separated from your spouse to
register as a member of Match.com or use the Website. Membership in the Service is void where prohibited. By
using the Website, you represent and warrant that you have the right, authority and capacity to enter into this
Agreement and to abide by all of the terms and conditions of this Agreement.

3. **Membership and Subscription; Pricing.** You may become a Member of the Service at no cost. As a Member,
you will have the ability to participate in some, but not all, of the features and services available within the
Service. In order to access additional features and services, including the ability to communicate with other
Members, you must become a paying subscriber to the Service. Please see Subscribe for a description of the
current subscription plans and their prices. Please note that the subscription policies that are disclosed to you in
subscribing to the service are deemed part of this Agreement. Please see Billing Details for a description of such
policies. For purposes of this Agreement the term "Member" includes subscribers, unless where its usage indicates
otherwise. From time to time, Match.com may remove the profiles of non-subscribers.

4. **Term.** This Agreement will remain in full force and effect while you use the Website and/or are a Member. You
may terminate your membership and/or subscription at any time, for any reason, by following the instructions on
the Resign pages in Account Settings, or you may Contact Us online or send Match.com written notice of
termination to Match.com, P.O. Box 12305, Dallas, TX 75225. If you resign or cancel your membership and/or
subscription via the Match.com site, to help Match.com analyze and improve the Service, you may be asked to
provide a reason for your resignation/cancellation. You may bypass this brief resignation survey page and continue
the resignation/cancellation process by clicking the "Continue Cancellation" or other similar button on the page. If
you terminate your subscription, your subscription will remain active until the end of your then-current
subscription period (that is, the subscription period through which you had paid prior to your termination).
Match.com may terminate your membership and/or subscription by sending notice to you at the email address you
provide in your application for membership, or such other email address as you may later provide to Match.com.
**If Match.com terminates your membership in the Service because you have breached this Agreement,
you will not be entitled to any refund of unused subscription fees.** All decisions regarding the termination
of accounts shall be made in the sole discretion of Match.com. Match.com is not required to provide you notice
prior to terminating your membership and/or subscription. Match.com is not required, and may be prohibited,
from disclosing a reason for the termination of your account. Even after your membership or subscription is
terminated, this Agreement will remain in effect. All terms that by their nature may survive termination of this
Agreement shall be deemed to survive such termination.

5. **Non-commercial Use by Members.** The Website is for the personal use of individual Members only and may
not be used in connection with any commercial endeavors. Organizations, companies, and/or businesses may not
become Members and should not use the Service or the Website for any purpose. Illegal and/or unauthorized uses
of the Website, including collecting usernames and/or email addresses of members by electronic or other means
for the purpose of sending unsolicited email and unauthorized framing of or linking to the Website may be
investigated, and appropriate legal action will be taken, including without limitation, civil, criminal, and injunctive
redress. Use of the Website is with the permission of Match.com, which may be revoked at any time, for any
reason, in Match.com's sole discretion.

6. **Account Security.** You are responsible for maintaining the confidentiality of the username and password that
you designate during the Registration process, and you are fully responsible for all activities that occur under your
username and password. You agree to (a) immediately notify Match.com of any unauthorized use of your
username or password or any other breach of security, and (b) ensure that you exit from your account at the end

of each session. Match.com will not be liable for any loss or damage arising from your failure to comply with this provision. You should use particular caution when accessing your account from a public or shared computer so that others are not able to view or record your password or other personal information. If you share your computer with others, you may wish to consider disabling your auto-sign in feature if you have linked your Window's Live ID to your Match.com account.

**7. YOUR INTERACTIONS WITH OTHER MEMBERS. YOU ARE SOLELY RESPONSIBLE FOR YOUR INTERACTIONS WITH OTHER MEMBERS. YOU UNDERSTAND THAT MATCH.COM DOES NOT IN ANY WAY SCREEN ITS MEMBERS, NOR DOES MATCH.COM INQUIRE INTO THE BACKGROUNDS OF ITS MEMBERS OR ATTEMPT TO VERIFY THE STATEMENTS OF ITS MEMBERS. MATCH.COM MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE CONDUCT OF MEMBERS OR THEIR COMPATIBILITY WITH ANY CURRENT OR FUTURE MEMBERS. IN NO EVENT SHALL MATCH.COM BE LIABLE FOR ANY DAMAGES WHATSOEVER, WHETHER DIRECT, INDIRECT, GENERAL, SPECIAL, COMPENSATORY, CONSEQUENTIAL, AND/OR INCIDENTAL, ARISING OUT OF OR RELATING TO THE CONDUCT OF YOU OR ANYONE ELSE IN CONNECTION WITH THE USE OF THE SERVICE, INCLUDING WITHOUT LIMITATION, BODILY INJURY, EMOTIONAL DISTRESS, AND/OR ANY OTHER DAMAGES RESULTING FROM COMMUNICATIONS OR MEETINGS WITH OTHER REGISTERED USERS OF THIS SERVICE OR PERSONS YOU MEET THROUGH THIS SERVICE. YOU AGREE TO TAKE REASONABLE PRECAUTIONS IN ALL INTERACTIONS WITH OTHER MEMBERS OF THE SERVICE, PARTICULARLY IF YOU DECIDE TO MEET OFFLINE OR IN PERSON. IN ADDITION, YOU AGREE TO REVIEW MATCH.COM'S DATING SAFETY TIPS PRIOR TO USING THE SERVICE. YOU UNDERSTAND THAT MATCH.COM MAKES NO GUARANTEES, EITHER EXPRESS OR IMPLIED, REGARDING YOUR ULTIMATE COMPATIBILITY WITH INDIVIDUALS YOU MEET THROUGH THE SERVICE. YOU SHOULD NOT PROVIDE YOUR FINANCIAL INFORMATION (FOR EXAMPLE, YOUR CREDIT CARD OR BANK ACCOUNT INFORMATION) TO OTHER MEMBERS.**

8. **Content on Match.com.**

**(a) Proprietary Rights.** Match.com owns and retains all proprietary rights in the Website and the Service. The Website contains the copyrighted material, trademarks, and other proprietary information of Match.com, and its licensors. Except for that information which is in the public domain or for which you have been given written permission, you may not copy, modify, publish, transmit, distribute, perform, display, or sell any such proprietary information.

**(b) Reliance on Content, Advice, Etc.** Opinions, advice, statements, offers, or other information or content made available through the Service, but not directly by Match.com, are those of their respective authors, and should not necessarily be relied upon. Such authors are solely responsible for such content. **Match.com does not: (i) guarantee the accuracy, completeness, or usefulness of any information on the Service, or (ii) adopt, endorse or accept responsibility for the accuracy or reliability of any opinion, advice, or statement made by any party that appears on the Website. Under no circumstances will Match.com or its affiliates be responsible for any loss or damage resulting from your reliance on information or other content posted on the Website or transmitted to or by any Members.**

9. **Content Posted by You on Match.com.**

a. You are solely responsible for the Content that you publish or display (hereinafter, "post") on the Service, or transmit to other Members. You will not post on the Service, or transmit to other Members, any defamatory, inaccurate, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights (including, but not limited to, intellectual property rights, and rights of privacy and publicity). You will not provide

inaccurate, misleading or false information to the Company or to any other Member. If information provided to Match.com, or another Member, subsequently becomes inaccurate, misleading or false, you will promptly notify Match.com of such change.

b. You understand and agree that Match.com may review and delete any content, messages, double-blind emails, photos or profiles (collectively, "Content"), in each case in whole or in part, that in the sole judgment of Match.com violate this Agreement or which might be offensive, illegal, or that might violate the rights, harm, or threaten the safety of Members.

c. By posting Content to any public area of Match.com, you automatically grant, and you represent and warrant that you have the right to grant, to Match.com, its affiliates, licensees and successors, an irrevocable, perpetual, non-exclusive, fully paid, worldwide license to use, copy, perform, display, reproduce, adapt, modify and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. You further represent and warrant that public posting and use of your content by Match.com will not infringe or violate the rights of any third party.

d. The following is a partial list of the kind of Content that is illegal or prohibited on the Website. Match.com reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates this provision, including without limitation, removing the offending communication from the Service and terminating the membership of such violators. It includes, but is not limited to, Content that:

- is patently offensive to the online community, such as Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual;
- harasses or advocates harassment of another person;
- involves the transmission of "junk mail", "chain letters," or unsolicited mass mailing or "spamming";
- promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;
- promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated images, audio or video, or links to pirated images, audio or video files;
- contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);
- provides material that exploits people under the age of 18 in a sexual or violent manner, or solicits personal information from anyone under the age of 18;
- provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;
- solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and
- engages in commercial activities and/or sales without our prior written consent such as contests, sweepstakes,

barter, advertising, and pyramid schemes.

e. Your use of the Service, including but not limited to the Content you post on the Service, must be in accordance with any and all applicable laws and regulations.

f. You may not include in your Member profile any telephone numbers, street addresses, last names, URLs or email addresses.

g. You may not engage in advertising to, or solicitation of, other Members. This includes but is not limited to solicitation or advertising to buy or sell any products or services through the Service or to attend parties or other social functions or networking for commercial purposes. You may not transmit any chain letters or junk email to other Members. Although Match.com cannot monitor the conduct of its Members off the Website, it is also a violation of these rules to use any information obtained from the Service in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit, or sell to any Member without their prior explicit consent. In order to protect our Members from such advertising or solicitation, we reserve the right to restrict the number of emails which a Member may send to other Members in any 24-hour period to a number which we deem appropriate in our sole discretion.

h. All information you include in your Member profile must be accurate, current and complete.

10. **Prohibited Activities.** Match.com reserves the right to investigate and terminate your membership if you have misused the Service, or behaved in a way which could be regarded as inappropriate or whose conduct is unlawful or illegal. The following is a partial list of the type of actions that you may not engage in with respect to the Service:

- You will not impersonate any person or entity.
- You will not "stalk" or otherwise harass any person.
- You will not express or imply that any statements you make are endorsed by Match.com without our specific prior written consent.
- You will not use any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, "data mine", or in any way reproduce or circumvent the navigational structure or presentation of the Service or its contents.
- You will not post, distribute or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior consent of the owner of such proprietary rights.
- You will not remove any copyright, trademark or other proprietary rights notices contained in the Service.
- You will not interfere with or disrupt the Services or the site or the servers or networks connected to the Services or the site.
- You will not post, email or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment.
- You will not forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service.
- You will not "frame" or "mirror" any part of the Service or the Website, without Match.com's prior written authorization. You also shall not use meta tags or code or other devices containing any reference to Match.com or the Service or the site in order to direct any person to any other web site for any purpose.
- You will not modify, adapt, sublicense, translate, sell, reverse engineer, decipher, decompile or otherwise disassemble any portion of the Service or the Website or any software used on or for the Service or cause others to do so.

11. **Customer Service.** Match.com provides assistance and guidance through its customer care representatives. When communicating with our customer care representatives, you may not to be abusive, obscene, profane, offensive, sexist, threatening, harassing, racially offensive, or otherwise behave inappropriately. If we feel that your behavior towards any of our customer care representatives or other employees is at any time threatening or offensive, we reserve the right to immediately terminate your membership and you will not be entitled to any refund of unused subscription fees.

12. Subscriptions: Charges on Your Billing Account.

**(a) General.** Match.com bills you through an online account (your "Billing Account") for use of the Service. You agree to pay Match.com all charges at the prices then in effect for any use of the Service by you or other persons (including your agents) using your Billing Account, and you authorize Match.com to charge your chosen payment provider (your "Payment Method") for the Service. You agree to make payment using that selected Payment Method. Match.com reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

**(b) Recurring Billing.** Most subscription plans to the Service consist of an initial period, for which there is a one time charge, followed by recurring period charges as agreed to by you. By entering into this Agreement, you acknowledge that your subscription has an initial and recurring payment feature and you accept responsibility for all recurring charges prior to cancellation. MATCH.COM MAY SUBMIT PERIODIC CHARGES (E.G., MONTHLY) WITHOUT FURTHER AUTHORIZATION FROM YOU, UNTIL YOU PROVIDE PRIOR NOTICE (CONFIRMED IN WRITING UPON REQUEST BY MATCH.COM) THAT YOU HAVE TERMINATED THIS AUTHORIZATION OR WISH TO CHANGE YOUR PAYMENT METHOD. SUCH NOTICE WILL NOT AFFECT CHARGES SUBMITTED BEFORE MATCH.COM REASONABLY COULD ACT. TO TERMINATE YOUR AUTHORIZATION OR CHANGE YOUR PAYMENT METHOD, GO TO ACCOUNT SETTINGS.

**(c) Current Information Required.** YOU MUST PROVIDE CURRENT, COMPLETE AND ACCURATE INFORMATION FOR YOUR BILLING ACCOUNT. YOU MUST PROMPTLY UPDATE ALL INFORMATION TO KEEP YOUR BILLING ACCOUNT CURRENT, COMPLETE AND ACCURATE (SUCH AS A CHANGE IN BILLING ADDRESS, CREDIT CARD NUMBER, OR CREDIT CARD EXPIRATION DATE), AND YOU MUST PROMPTLY NOTIFY MATCH.COM IF YOUR PAYMENT METHOD IS CANCELED (E.G., FOR LOSS OR THEFT) OR IF YOU BECOME AWARE OF A POTENTIAL BREACH OF SECURITY, SUCH AS THE UNAUTHORIZED DISCLOSURE OR USE OF YOUR USER NAME OR PASSWORD. CHANGES TO SUCH INFORMATION CAN BE MADE AT ACCOUNT SETTINGS. IF YOU FAIL TO PROVIDE MATCH.COM ANY OF THE FOREGOING INFORMATION, YOU AGREE THAT MATCH.COM MAY CONTINUE CHARGING YOU FOR ANY USE OF THE SERVICE UNDER YOUR BILLING ACCOUNT UNLESS YOU HAVE TERMINATED YOUR SUBSCRIPTION FOR THE SERVICE (CONFIRMED BY YOU IN WRITING UPON REQUEST BY MATCH.COM).

**(d) Payment Method.** The terms of your payment will be based on your Payment Method and may be determined by agreements between you and the financial institution, credit card issuer or other provider of your chosen Payment Method (the "Payment Method Provider"). If Match.com does not receive payment from your Payment Method Provider, you agree to pay all amounts due on your Billing Account upon demand.

**(e) Change in Amount Authorized.** If the amount to be charged to your Billing Account varies from the amount you

preauthorized (other than due to the imposition or change in the amount of state sales taxes), you have the right to receive, and Match.com shall provide, notice of the amount to be charged and the date of the charge at least 10 days before the scheduled date of the transaction. Any agreement you have with your Payment Method Provider will govern your use of your Payment Method. You agree that Match.com may accumulate charges incurred and submit them as one or more aggregate charges during or at the end of each billing cycle.

**(f) Auto-renewal.** Your Match.com subscription will be automatically extended for successive renewal periods of the same duration as the subscription term originally selected, at the then-current non-promotional subscription rate. To change or resign your subscription at any time, go to Account Settings. If you resign, you may use your subscription until the end of your then-current subscription term; your subscription will not be renewed after your then-current term expires. However, you won't be eligible for a prorated refund of any portion of the subscription fee paid for the then-current subscription period.

**(g) Reaffirmation of Authorization.** Your non-termination or continued use of the Service reaffirms that Match.com is authorized to charge your Payment Method. Match.com may submit those charges for payment and you will be responsible for such charges. This does not waive Match.com's right to seek payment directly from you. Your charges may be payable in advance, in arrears, per usage, or as otherwise described when you initially subscribed to the Service.

**(h) Free Trials and Other Promotions.** Any free trial or other promotion that provides subscriber-level access to the Service must be used within the specified time of the trial. You must cancel your subscription before the end of the trial period in order to avoid being charged a subscription fee. If you cancel prior to the end of the trial period and are inadvertently charged for a subscription, please contact Customer Care to have the charges reversed.

**13. Modifications to Service.** Match.com reserves the right at any time to modify or discontinue, temporarily or permanently, the Service (or any part thereof) with or without notice. You agree that Match.com shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Service.

**14. Blocking of IP Addresses.** In order to protect the integrity of the Service, Match.com reserves the right at any time in its sole discretion to block Members from certain IP addresses from accessing the Website.

**15. Copyright Policy.** You may not post, distribute, or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior written consent of the owner of such proprietary rights. Without limiting the foregoing, if you believe that your work has been copied and posted on the Service in a way that constitutes copyright infringement, please provide our Copyright Agent with the following information: an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright interest; a description of the copyrighted work that you claim has been infringed; a description of where the material that you claim is infringing is located on the Website; your address, telephone number, and email address; a written statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf. Match.com's Copyright Agent for notice of claims of copyright infringement can be reached as follows: Match.com Legal, PO Box 25458, Dallas, TX 75225.

**16. Member Disputes.** You are solely responsible for your interactions with other Match.com Members. Match.com reserves the right, but has no obligation, to monitor disputes between you and other Members.

**17. Privacy.** Use of the Website and/or the Service is also governed by our Privacy Policy.

**18. Disclaimers.** Match.com is not responsible for any incorrect or inaccurate Content posted on the Website or in

connection with the Service, whether caused by users of the Website, Members or by any of the equipment or programming associated with or utilized in the Service. **Match.com is not responsible for the conduct, whether online or offline, of any user of the Website or Member of the Service.** Match.com assumes no responsibility for any error, omission, interruption, deletion, defect, delay in operation or transmission, communications line failure, theft or destruction or unauthorized access to, or alteration of, user or Member communications. Match.com is not responsible for any problems or technical malfunction of any telephone network or lines, computer online systems, servers or providers, computer equipment, software, failure of email or players on account of technical problems or traffic congestion on the Internet or at any Website or combination thereof, including injury or damage to users and/or Members or to any other person's computer related to or resulting from participating or downloading materials in connection with the Web and/or in connection with the Service. Under no circumstances will Match.com or any of its affiliates, advertisers, promoters or distribution partners be responsible for any loss or damage, including personal injury or death, resulting from anyone's use of the Website or the Service, any Content posted on the Website or transmitted to Members, or any interactions between users of the Website, whether online or offline. The Website and the Service are provided "AS-IS" and Match.com expressly disclaims any warranty of fitness for a particular purpose or non-infringement. Match.com cannot guarantee and does not promise any specific results from use of the Website and/or the Service.

In addition to the preceding paragraph and other provisions of this Agreement, any advice that may be posted on the Website is for informational and entertainment purposes only and is not intended to replace or substitute for any professional financial, medical, legal, or other advice. Match.com makes no representations or warranties and expressly disclaims any and all liability concerning any treatment, action by, or effect on any person following the information offered or provided within or through the Website. If you have specific concerns or a situation arises in which you require professional or medical advice, you should consult with an appropriately trained and qualified specialist.

19. **Links.** The Service may provide, or third parties may provide, links to other World Wide Web sites or resources. Because Match.com has no control over such sites and resources, you acknowledge and agree that Match.com is not responsible for the availability of such external sites or resources, and does not endorse and is not responsible or liable for any Content, advertising, products or other materials on or available from such sites or resources. You further acknowledge and agree that Match.com shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with the use of, or reliance upon, any such Content, goods or services available on or through any such site or resource.

20. **Linked Accounts.** Match.com permits you to associate a Match.com username and password with your Window's Live ID. When you establish a linked account, you can sign into Window's Live or AOL ScreenName and automatically sign into Match.com at the same time. Match.com is not responsible for the operation or functionality of Window's Live or AOL ScreenName. Microsoft is a registered trademark of Microsoft Corporation and AOL is a registered trademark of America Online, Inc.

21. **Limitation on Liability.** Except in jurisdictions where such provisions are restricted, in no event will Match.com be liable to you or any third person for any indirect, consequential, exemplary, incidental, special or punitive damages, including also lost profits arising from your use of the Web site or the Service, even if Match.com has been advised of the possibility of such damages. Notwithstanding anything to the contrary contained herein, Match.com's liability to you for any cause whatsoever, and regardless of the form of the action, will at all times be limited to the amount paid, if any, by you to Match.com for the Service during the term of membership.

22. **U.S. Export Controls.** Software from this Website (the "Software") is further subject to United States export controls. No Software may be downloaded from the Website or otherwise exported or re-exported (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Software, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

23. **Jurisdiction and Choice of Law.** If there is any dispute arising out of the Website and/or the Service, by using the Website, you expressly agree that any such dispute shall be governed by the laws of the State of Texas, without regard to its conflict of law provisions, and you expressly agree and consent to the exclusive jurisdiction and venue of the state and federal courts of the State of Texas, in Dallas County, for the resolution of any such dispute.

24. **Indemnity by You.** You agree to indemnify and hold Match.com, its subsidiaries, affiliates, officers, agents, and other partners and employees, harmless from any loss, liability, claim, or demand, including reasonable attorney's fees, made by any third party due to or arising out of your use of the Service in violation of this Agreement and/or arising from a breach of this Agreement and/or any breach of your representations and warranties set forth above.

25. **No Third Party Beneficiaries.** You agree that, except as otherwise expressly provided in this Agreement, there shall be no third party beneficiaries to this Agreement.

**Other.** This Agreement contains the entire agreement between you and

Match.com regarding the use of the Website and/or the Service. If any provision of this Agreement is held invalid, the remainder of this Agreement shall continue in full force and effect.

Please contact us with any questions regarding this agreement. Match.com is a trademark of Match.com, L.L.C.

**I HAVE READ THIS AGREEMENT AND AGREE TO ALL OF THE PROVISIONS CONTAINED ABOVE.**

Click here to complete registration

| Match.com Guarantee | **About Match.com** | **Help** | **Dating Articles & Advice** | **Advertise on Match.com** |
|---|---|---|---|---|
| Mobile | Media Room | Profile Assistance | How Online Dating Works | Become an Affiliate |
| Gift Subscriptions | Careers | Contact Us | Online Dating Safety Tips | Promotions & Sponsorships |
| ProfilePro | Terms of Use | Site Map | Success Stories | Business Development |
| | Match International | Your Privacy | Relationship Tips | |

© Copyright 2011 Match.com, L.L.C. iwec1-043fec1-003sec1-803

partner sites:   Domania | Expedia | GetSmart | Hotels | Hotwire | Live Nation | Ticketmaster | Online Dating

# EXHIBIT B

# BURSOR & FISHER, P.A.
### ATTORNEYS AT LAW
2121 North California Blvd., Suite 1010
Walnut Creek, CA 94596-7351
(925) 482-1515 (tel)
(925) 407-2700 (fax)
www.bursor.com

February 17, 2011

*__Via Certified Mail - Return Receipt Requested__*

Match.com, L.L.C.
8300 Douglas Ave., Suite 800
Dallas, TX 75225

Re:   *Demand Letter Pursuant to California Civil Code § 1782*

To Whom It May Concern:

      This letter serves as a preliminary notice and demand for corrective action by Match.com, L.L.C., ("Match") pursuant to the provisions of California Civil Code § 1782, on behalf of our client Kristy Gamayo and all other persons similarly situated.

      With regard to inactive members (*i.e.*, members who have cancelled their Match subscriptions and/or allowed their subscriptions to lapse), Match takes virtually no action to remove their profiles from its website, which therefore remain searchable by members, appear as, and are in fact counted among Match's "active" members for months and sometimes years after the individuals have become inactive. With regard to the thousands of fake and fraudulent profiles on its website (*i.e.*, profiles likely placed by third-parties for illegitimate and unlawful purposes), Match likewise makes little to no effort to vet, police or remove these profiles and thereby permits, condones and acquiesces in their posting. The effect of these deceptive practices was to mislead Ms. Gamayo and other Match subscribers into believing that millions of individuals are active Match members and further expose Ms. Gamayo and other Match subscribers to various frauds and other schemes. Ms. Gamayo and other Match subscribers also were misled into joining Match and/or were misled into renewing their memberships based on communications from Match that active members were trying to contact them when such representations were false. Worse yet, Match overbills and makes unauthorized charges to the debit and credit cards of members and former members alike.

      By intentionally leaving profiles of inactive members viewable and searchable on the website far beyond their date of inactivity or cancellation, by falsely labeling profiles of inactive members as "active within [#] days" when the profiles had been inactive for far longer than represented, by disseminating false solicitations informing potential, current or former members that a potential match is trying to contact them through the Match.com website when that is not the case, and by misrepresenting the prices and

**BURSOR & FISHER, P.A.**                              page 2

charges for its services and imposing unauthorized charges on victims' accounts, Match
has violated numerous provisions of California law including the Consumers Legal
Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(2), (3), (5),
(9), (14) and (16).

    We hereby demand that Match immediately (1) cease and desist from sending
false solicitations informing potential, current or former members that a potential match
is trying to contact them through the Match.com website; (2) remove all profiles of
inactive, fake and fraudulent members from its website; (3) cease and desist from falsely
labeling profiles of inactive members as "active within [#] days" when the profiles have
been inactive for far longer than represented; (4) enforce the Prohibited Activities against
violators as defined in Match's Terms of Use Agreement; and (5) make full restitution of
all monies wrongfully obtained by refunding all payments received from purchasers of
Match.com services.

    It is further demanded that Match preserve all documents and other evidence
which refer or relate to any of the above-described practices including, but not limited to,
the following:

    1.    All documents reflecting the identities of all persons who purchased
services from www.match.com, from the date that site commenced operation through the
present, and the amounts charged to and/or paid by each such person;

    2.    All documents concerning your solicitations to potential and former
customers;

    3.    All documents concerning presentations to or communications with
investors concerning Match's business plans, results or prospects;

    4.    All computer code and associated comments and revision histories,
formulas, engineering specifications, or schematics that define or otherwise describe in
detail the algorithms, processes, or structure of the Match.com website and any
application programming interfaces (APIs) associated with Match.com;

    5.    All communications with customers and former customers concerning
complaints related to Match's solicitations, Match's failure to provide promised services,
data or information, misrepresentations related to Match's service or prices, or
unauthorized charges; and

    6.    All communications with banks or credit card companies concerning
disputed charges for Match.com services.

    Please comply with this demand within 30 days from receipt of this letter.

## BURSOR & FISHER, P.A.

We are willing to negotiate with Match to attempt to resolve the demands asserted in this letter. If Match wishes to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that Match is not interested in resolving this dispute short of litigation.

If Match contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter, but in no event later than 30 days from the date of receipt.

Very truly yours,

L. Timothy Fisher
ltfisher@bursor.com